UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ZHAOYIN WANG,                          :
     Plaintiff,                       :        CIVIL ACTION NO.
                                      :        3:14-CV-01790 (VLB)
v.                                     :
                                      :
BETA PHARMA, INC., DON ZHANG, AND      :
ZHEJIANG BETA PHARMA CO., LTD.,        :
     Defendants.                      :        August 24, 2015

<u>ORDER REMANDING CASE</u>

Plaintiff Zhaoyin Wang ("Wang"), a Canadian citizen, brings state law breach of contract, negligent and fraudulent misrepresentation, and breach of fiduciary duty claims against Defendants Beta Pharma, Inc. ("Beta Pharma"), a Delaware corporation with a principal place of business in Princeton, New Jersey, and Don Zhang ("Zhang"), a citizen of New Jersey (collectively the "Removing Defendants").  Plaintiff also seeks a declaratory judgment and injunctive relief against Defendant Zhejiang Beta Pharma Co. Ltd. ("ZBP"), a Chinese corporation, principally based in China.

I.    <u>Factual Background[1]</u>

---

[1] **The Court gleans the facts of this case from the Complaint, as well as from relevant filings, documents, affidavits, and declarations submitted by the parties. In the context of motions to remand, it is well-established that courts "treat all factual allegations in the Complaint as true."** *Wachtell, Lipton, Rosen & Katz v. CVR Energy, Inc.*, **18 F. Supp. 3d 414, 416 n. 2 (S.D.N.Y. 2014) (citing and quoting** *Federal Ins. Co. v. Tyco Intern'l Ltd.*, **422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff.")). The same is true when a court raises the issue of subject matter jurisdiction** *sua sponte*. *See Adames v. Taju*, **No. 15-cv-0288 (MKB), 2015 WL 307025, at \*1 (E.D.N.Y. Jan. 23, 2015) (noting that "all allegations contained in the complaint are assumed to be true" and determining** *sua sponte* **court lacked subject matter jurisdiction). Notwithstanding these principles, the Removing Defendants contend that "the Court cannot simply accept allegations of fact set forth in the Complaint as true,**

The Complaint arises from the alleged breach of a partnership agreement, executed on March 26, 2010 (the "Agreement").  *See* [Dkt. #1-1, Ex. A to Compl. at 39-41].  The parties to the Agreement were Plaintiff and Defendant Zhang, who signed the Agreement on behalf of Defendant Beta Pharma.  [*Id.* at 41].  At the time the Agreement was signed, Zhang served as both the majority stockholder

---

especially when Beta Pharma and Zhang have presented competent proof that contradicts Plaintiff's allegations."  [Dkt. #91, Defs' Reply at 3].  Neither of the fraudulent joinder cases the Removing Defendants cite limits the Court's reliance on the allegations in the Complaint.  *See Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, No. 08-CV-1773 (JFB)(AKT), 2009 WL 385541, at *3 (E.D.N.Y. Feb. 11, 2009); *CMS Volkswagen Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, No. 13-cv-03929 (NSR), 2013 WL 6409487, at *4 (S.D.N.Y. Dec. 6, 2013).  The other case they raise, *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994), is inapposite, because it did not concern fraudulent joinder, but instead addressed whether the allegations in the complaint established the requisite jurisdictional amount in controversy.  *Id.* at 305.  Even there, the Second Circuit stated that where "jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of the evidence."  *Id.* (quotations and citation omitted).  The question of weight to be given disputed facts is largely academic here, since in reaching its conclusions, the Court relies upon allegations which are either undisputed or which the Removing Defendants have not refuted by even a preponderance of the evidence, let alone by the clear and convincing evidence standard applicable to a claim of fraudulent joinder.  *See Audi*, 2009 WL 38554 at *3 ("In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, *by clear and convincing evidence* . . . that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.") (emphasis added) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

and President of Beta Pharma, and was Vice-President and a director of Defendant ZBP.  *See* [Dkt. #1-1, Compl. at Count 1 at ¶¶ 3, 8].[2]

Pursuant to the Agreement, Plaintiff served as the Chief Scientific Officer of Beta Phama.  *See* [Dkt. #1-1, Ex. A to Compl. at ¶ 1].  His responsibilities included managing Beta Pharma's "overall Research and Development efforts . . . including [its] joint venture with other organizations."  [*Id.*]  In compensation for this work, Plaintiff was to receive from Beta Pharma a salary of 850,000 RMB Yuan, 2 million shares of Beta Pharma, and 3 million shares of "current [ZBP] stock," which represented 1% of the outstanding shares of ZBP.  [*Id.* at ¶¶ 3-4].  The Agreement also references a "transaction" in connection with Plaintiff's ZBP shares that would occur at a "certain point such as" when the company has gone "public."  [*Id.* at ¶ 3].[3]

---

[2] Zhang asserts that he left his positions at ZBP in March 2013 and that he presently has "no other role at [ZBP]."  [Dkt. #31-1, Zhang Supp. Aff. at ¶ 5].  However, Zhang maintains that he continues to "have personal knowledge regarding [ZBP] and its operations" and has submitted a sworn affidavit in which he attests to the present state of the company.  [*Id.* at ¶¶ 6, 7, 10].  He is also currently CEO, president, and a shareholder of Beta Pharma.  [*Id.* at ¶ 3].

[3] In their Reply, the Removing Defendants contend that "the transaction" referred to in paragraph three of the Agreement concerns the transfer of ZBP shares to Plaintiff, that such transfer was to occur "after the IPO," and that since the IPO has not yet occurred, Plaintiff has no right to the stock.  [Dkt. #91, Defs.' Reply at 6 n. 2].  While the Removing Defendant's construction of this provision may be correct, it is not the only reasonable one.  For instance, the paragraph could be read to provide for a pre-IPO transfer of "3 million shares of *current* [ZBP] stock," and "the transaction" referred to later in the paragraph could concern a related transaction at or around the time of the IPO, such as the conversion or exchange of the pre-IPO shares for publicly traded shares.  [Dkt. #1-1, Ex. A to Compl. at ¶ 3 (emphasis added)].  In addition, the paragraph suggests that the IPO is one of several events which could trigger the execution of the referenced transaction.  *See* [*id.* ("[U]pon certain point *such as* company go public, the transaction will be executed.") (emphasis added)].  At this stage, the Court takes no view on which, if any, of these interpretations is the controlling one.

ZBP was formed in 2002, by Beta Pharma and other investors, as a Sino-foreign joint venture for the purpose of developing, testing, and marketing pharmaceuticals. [*Id.* at ¶ 5; Dkt. #88-3, Li Decl. at ¶ 3].[4]   In forming ZBP, Beta Pharma received a 45% interest in the company.  [Dkt. #1-1, Compl. at Count 1 at ¶ 7].  According to a draft prospectus prepared by ZBP's successor entity, Betta, as of June 2014, four months before the Complaint was filed, Beta Pharma held approximately 8% of ZBP's outstanding shares.  *See* [Dkt. #89-1, Ex. A to Katz Decl. at 1-1-45].  Beta Pharma's ownership interest exceeded those of two of the three "controlling shareholders of the Company," Beicheng Investment, which held 7.5%, and Yinxiang Wang, who held approximately 6.5% of the shares.  [*Id.* at 1-1-28].  Overall, Beta Pharma was the fourth largest shareholder of ZBP, and the largest shareholder owned just 29.74% of ZBP's outstanding shares.  [*Id.* at 1-1-28, 1-1-44, 1-1-45].

Following the execution of the Agreement, Plaintiff formed Beta Pharma Canada, which he co-owned with Defendant Zhang, invested approximately $300,000 of his own funds into the company, and worked full time at the company for approximately three years.  [Dkt. #1-1, Compl. at Count 1 at ¶ 11].  Notwithstanding this work, Plaintiff contends that the Removing Defendants (i)

---

[4] The parties appear to agree that sometime after the Agreement was executed but before the Complaint was filed, ZBP changed its name to Betta Pharmaceuticals ("Betta") and reorganized its corporate structure to become a joint stock company.  [Dkt. ## 88-1, Clarke Decl. at ¶ 4; 88-3, Li Decl. at ¶ 3; 89, Pl.'s Resp. at 4 n. 2, 11].  According to the Removing Defendants, under Chinese Company Law, transfers of shares in joint stock companies must be approved by the Chinese Ministry of Commerce.  [Dkt. ## 88-1, Clarke Decl. at ¶ 5; 88-3, Li Decl. at ¶ 4].  In addition, such companies are generally unable to hold any of their own shares.  [Dkt. #88-1, Clarke Decl. at ¶ 6].  They are also unable to approve or block any transfers of shares from one shareholder to any other third party.  [Dkt. #91-1, Clarke Supp. Decl. at ¶ 7].

failed to pay him a salary, (ii) failed to register the shares of ZBP in his name on the books and records of ZBP in China, (iii) failed to cause him to participate in the planned initial public offering ("IPO") of ZBP shares in China, and (iv) withheld material information, including information regarding the transferability of the ZBP shares, Beta Pharma's inability to unilaterally provide Plaintiff with the ZBP shares and accompanying shareholder rights, and ZBP's alleged opposition to Beta Pharma's transfer of its shares to Plaintiff.  [*Id.* at ¶ 12, Count 2 at ¶ 15, Count 3 at ¶ 12, Count 4 at ¶ 13, Count 6 at ¶¶ 12-14, and Count 7 at ¶ 13].  With regard to ZBP's opposition to the transfer, the Complaint alleges that "the ZBP board of directors would not permit [Beta Pharma] to transfer shares to plaintiff, [] would not recognize [Beta Pharma]'s transfer of shares, and it had ordered [Beta Pharma] and Zhang to cancel or unwind the transaction by paying plaintiff the fair market value of his interest in ZBP."  [*Id.* at Count 5 at ¶ 13(g) and Count 8 at ¶ 14(g)].[5]

For relief on the breach of contract claims, Plaintiff seeks specific performance of the Agreement, including the receipt and registration in his name of 1% of ZBP's outstanding stock, as well as monetary damages.  [*Id.* at Count 1 at ¶ 14 and Count 2 at ¶ 17].  Plaintiff also brings a separate claim against ZBP for a judgment declaring that he owns 1% of ZBP's outstanding stock and seeks a permanent injunction requiring ZBP to cause his shares to be registered on its books and records and to grant Plaintiff all rights appurtenant to his status as a shareholder, including the right to participate in ZBP's IPO.  [*Id.* at Count 9 at ¶ 5].

---

[5] Without support, the Removing Defendants contend that ZBP "has never taken any action with respect to Plaintiff's alleged ownership interest."  [Dkt. #91, Defs.' Reply at 10].

II.   **Procedural History**

The Complaint was originally filed in the Connecticut Superior Court, Judicial District of New Haven, on October 27, 2014, docket number NNH-CV-14-6050848.  On December 1, 2014, the Removing Defendants filed a Notice of Removal, pursuant to 28 U.S.C. §§ 1441(a), 1446 and 1332, in which they asserted that Defendant ZBP, the only non-diverse defendant, was fraudulently joined.  [Dkt. #1, Defs.' Notice of Removal at ¶ 5].  In seeking removal of this action, the Removing Defendants did not obtain the consent of Defendant ZBP.  [*Id.* at ¶ 11].  Moreover, to date, ZBP has neither responded to the Complaint nor even entered an appearance in this action.

On December 5, 2014, the Removing Defendants filed a motion to transfer this action to the United States District Court for the District of New Jersey.  *See* [Dkt. #17].   The Removing Defendants subsequently filed a motion to dismiss, motion for a protective order, motion to quash, and a motion to disqualify Plaintiff's counsel.  *See* [Dkt. ## 26, 49, 56, 64].  On May 6, 2015, the Court scheduled a hearing to resolve several of these pending motions.  *See* [Dkt. #72].  In the course of reviewing the parties' voluminous filings in advance of the hearing, including the Removing Defendants' removal notice, the Court began to question whether it had subject matter jurisdiction over the dispute.  Accordingly, on June 6, 2015, the Court vacated the scheduled hearing and issued an Order to Show Cause why this case should not be remanded for lack of subject matter jurisdiction.  *See* [Dkt. ## 82-83].

In its Order, the Court stated that it was "presently unconvinced" that the two bases for removal articulated in the Removing Defendants' notice, that ZBP

was fraudulently joined and had not been properly served, were "sufficient to preclude the Court from considering the citizenship of ZBP."  [Dkt. #82, Order to Show Cause at 2].  On July 7, 2015, the Removing Defendants timely submitted their response.  [Dkt. #88].  On July 21, 2015, Plaintiff filed responses.  *See* [Dkt. ## 89-90].  On July 28, 2015, the Removing Defendants filed a reply in support of their initial response.  [Dkt. #91].  On August 4, 2015, Plaintiff submitted a surreply.  [Dkt. #92].  After reviewing the parties' filings, the removal notice, and applicable law, the Court remains unconvinced that it has subject matter jurisdiction and, *sua sponte*, REMANDS this matter back to the Connecticut Superior Court.

### III.  Legal Standards

In their removal notice, the Removing Defendants asserted that ZBP's citizenship need not be considered for two reasons: (i) ZBP was fraudulently joined because Plaintiff Wang is unable to bring a cause of action against it under Connecticut law and (ii) ZBP has not been properly served.  [Dkt. #1, Defs.' Notice of Removal, at ¶¶ 5-6.  In their show cause response, the Removing Defendants offer three additional grounds for removal: (i) ZBP is neither a necessary nor an indispensable party; (ii) Plaintiff's cause of action as to ZBP is legally impossible because the Court lacks personal jurisdiction over ZBP; and (iii) Plaintiff's post-Complaint conduct indicates that ZBP was joined solely to defeat diversity jurisdiction.  [Dkt. #88, Defs.' Resp. at 9, 17, 19, 21].  Taken separately or together, none of these arguments are sufficient to satisfy the Removing Defendants' heavy burden of establishing that ZBP was fraudulently joined.

A.   Removal Standard

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (citation and quotations omitted).   The party asserting federal jurisdiction bears the burden of proving that the case is properly before the federal court.  *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 189, 189 (1936).  Where federal jurisdiction is asserted by a defendant pursuant to the removal statute, 28 U.S.C. § 1441, "the defendant bears the burden of demonstrating the propriety of removal." *California Pub. Emps. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (quotation and citations omitted).  "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2012) (citation and quotations omitted).  A party may remove "[a]ny civil action of which the district courts have original jurisdiction."  28 U.S.C. § 1441(a). Section 1332, the diversity statute, states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  "It is the duty of the Court to raise the question of removal jurisdiction, *sua sponte*, if appropriate."  *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 117 (E.D.N.Y. 2005) (citing *Mignonga v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991)).

8

Here, Plaintiff is a foreign citizen, the Removing Defendants are citizens of states, and Defendant ZBP is a foreign citizen.  The Second Circuit has plainly stated that "diversity is lacking . . . where on one side [of a complaint] there are citizens and aliens and on the opposite side there are only aliens."  *Universal Licensing Corp. v. Paola del Lunco S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).  Accordingly, for subject matter jurisdiction to exist in this case, the Removing Defendants must establish that non-diverse Defendant ZBP was fraudulently joined.

### B.  Fraudulent Joinder Standard

The fraudulent joinder doctrine is "a narrow exception to the rule that diversity jurisdiction requires complete diversity."  *Deming v. Nationwide Mut. Ins. Co.*, No. 03-CV-1225 (CF), 2004 WL 332741, at *4 (D. Conn. Feb. 14, 2004) (quoting *Smallwood v. Illinois Central R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003)).  Under the doctrine, "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court."  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004).  "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."  *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir. 1998).  Put another way, "[j]oinder will be considered fraudulent when it is established that there can be no recovery against the defendant under

the law of the state on the cause alleged." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001).[6]

The fraudulent joinder standard is strictly applied by courts in this Circuit. *See In re Fosamax Prods. Liab. Litig.*, No. 09-CV-4061, 2009 WL 3109832, at *2 (S.D.N.Y. Sept. 28, 2009) ("Most courts in this district have applied the 'no possibility' standard rather strictly."); *see also Stan Winston v. Toys "R" Us, Inc.*, 314 F. Supp. 2d, 177, 183 (S.D.N.Y. 2003) (concluding that defendants had not shown that it was "legally impossible" for non-diverse defendant to be liable under state law); *Nemazee v. Premier, Inc.,* 232 F.Supp.2d 172, 178 (S.D.N.Y.2002) (noting that fraudulent joinder "turns on whether recovery is per se precluded"; "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder"). As courts have explained in the context of fraudulent joinder, "it is not sufficient to argue that the complaint fails to state a claim against [a non-diverse] defendant." *Stan Winston*, 314 F. Supp. 2d at 182; *see also Read v. Nationwide Mut. Ins. Co.*, No. 3:06-cv-00514 (JCH), 2006 WL 2621652, at *1 (D. Conn. Sept. 13, 2006) ("To show that a 'fraudulent joinder has occurred, the defendants must do more than show that the plaintiff has failed to state a claim upon which relief can be granted."). Even allegations that are "general and at times in barebones language" may be sufficient to defeat a claim of fraudulent

---

[6] "The language 'no possibility' has been interpreted as meaning no 'reasonable possibility' or 'no reasonable basis.'" *Doe v. Fed. Express Corp.*, No. 3:05-cv-1968 (WWE), 2006 WL 1405641, at *1 (D. Conn. May 22, 2006) (quoting *In re Rezulin Prods. Liability Litig.*, 133 F. Supp. 2d 272, 280 n. 4 (S.D.N.Y. 2001)). While aware of the different formulations, for the reasons discussed below, *see infra* at 13-28, "the court finds that it need not choose among the[m]" because it "finds no fraudulent joinder in the present case, even if it interprets the *Pampillonia* 'no possibility' standard as 'no reasonable basis'" or no reasonable possibility. *Oliva v. Bristol-Meyers Squibb Co.*, No. 3:05-cv-00486 (JCH), 2005 WL 3455121, at *2 (D. Conn. Dec. 16, 2005).

joinder.  *Ulysse v. AAR Aircraft Component Servs.*, 841 F. Supp. 2d 659, 684 (E.D.N.Y. 2012) (finding no fraudulent joinder and remanding case).

While the Second Circuit, in *Pampillonia*, enunciated the fraudulent joinder test as one in which "there is no possibility, based on the pleadings that a plaintiff can state *a cause of action* against the non-diverse defendant in state court," the *Pampillonia* court also recognized that there exist "various formulations of the same test in this Circuit."  *Pampillonia*, 138 F.3d at 461, 461 n. 3 (emphasis added).  At its core, the fraudulent joinder test is intended to prevent a plaintiff from "defeat[ing] a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy."  *Id.* at 460-61; *see also Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("Fraudulent joinder is a legal term of art used to refer to the joinder of unnecessary or nominal parties in order to defeat federal jurisdiction.") (citation and quotations omitted); *Intershoe Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000) (noting that "the fraudulent joinder doctrine" is "most frequently applied to the joinder of unnecessary defendants"); *New York State Ins. Fund v. U.S. Liab. Ins. Co.*, No. 03 Civ. 6652 (LMM), 2004 WL 385033, at *2 (S.D.N.Y. Mar. 2, 2004) ("[T]he joinder of parties lacking a genuine interest in the controversy frequently is referred to as fraudulent joinder.").  Accordingly, courts in this Circuit have found "that the existence of a 'cause of action'" against a named party is one, but not "the sole basis upon which a defendant can properly be considered for diversity jurisdiction purposes."  *Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, No. 08-cv-1773 (JFB)(AKT), 2009 WL 385541, at **4, 4 n. 1 (E.D.N.Y. Feb. 11, 2009)

(citing and quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 384 (2d Cir. 2006)).

An additional basis upon which a defendant must be considered for diversity purposes is when that defendant is "a necessary or indispensable party to [the] lawsuit." *Id.*; *CMS Volkswagen Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, No. 13-cv-03929 (NSR), 2013 WL 6409487, at *6 (S.D.N.Y. Dec. 6, 2013) ("[I]n applying *Pampillonia*'s standard, the question of whether Plaintiffs could state an action against [the non-diverse defendant] depends on whether [the defendant] was a necessary party under state law."); *Metro. Prop. & Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.*, 780 F. Supp. 885, 888, 896 n. 6 (D. Conn. 1991) ("The citizenship of a defendant, however, who is a proper, even though not indispensable, party must be considered when determining the existence of diversity.") (citations and quotations omitted) (finding no fraudulent joinder, remanding case, and noting that a named defendant "need not be indispensable, but only a proper party to this action for the court to consider his citizenship in determining jurisdiction for removal").[7]

While the Removing Defendants appear to challenge this assertion in their show cause response, the lone case they cite, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005), is plainly distinguishable. *See* [Dkt. #88, Defs.' Resp. at 10]. In *Roche*, there was complete diversity among the named parties and the Fourth

---

[7] To the extent some courts have construed *Pampillonia* and its progeny as limiting the fraudulent joinder inquiry to the question of "whether the defendant at issue is a necessary party under state law," the Court disagrees and adopts the position taken by those courts holding that a defendant must be considered for the purposes of diversity if, under state law, they are (i) necessary or indispensable *or* (ii) subject to a cause of action. *Morrow v. Nationwide Mut. Fire Ins. Co.*, No. 14-cv-2664 (JFB), 2014 WL 4638912, at *5 (E.D.N.Y. Sept. 16, 2014) (clarifying holding in *Audi*).

Circuit held that the case should nevertheless be remanded because the diverse defendants did not "negate the existence of a potential codefendant whose presence in the action would destroy diversity." *Roche*, 546 U.S. at 82. The Supreme Court held that "no decision . . . supports the burden the Court of Appeals placed on a properly joined defendant." *Id.* at 91. Here, Plaintiff has shouldered the burden discussed in *Roche* by identifying and naming the non-diverse defendant, ZBP, in his Complaint.

IV.    **Discussion**

A.    **Defendant ZBP is Properly Joined Because it is a Necessary Party**[8]

        Connecticut law is consistent with and Connecticut courts look to federal jurisprudence in determining whether a party is necessary or indispensable. *See Sturman v. Socha*, 191 Conn. 1, 6-7, 463 A.2d 527, 530 (Conn. 1983) (defining necessary and indispensable parties consistent with federal law) (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)); *Labulis v. Kopylec*, No. CV 020463204S, 2008 WL 4379237, at *2 (Conn. Super. Ct. Sept. 10, 2008)  ("As regards joinder and non-joinder, indispensable parties and the various complicated Practice Book sections and case law of our state . . . [t]he recent tendency of the Superior Courts is to . . . follow the most analogous Federal Rule") (quotation and citation omitted), *aff'd* 128 Conn. App. 571, 17 A.3d 1157 (Conn. App. 2011).  Under Federal Rule 19, "a party is necessary if 'in that person's absence, the court cannot accord complete relief among existing parties.'" *Gibbs Wire & Steel Co., Inc. v. Johnson*, 255 F.R.D. 326, 328 n. 1 (D. Conn. 2009) (quoting Fed. R. Civ. P.

---

[8] Because the Court bases its fraudulent joinder conclusion on its determination that ZBP is a necessary party, it does not consider the legal sufficiency of the Ninth Count of the Complaint under Connecticut law.

19(a)(1)(A)); *see also Emar Dev., Inc. v. William Raveis Real Estate Inc.*, No. CV95-0548632, 1995 WL 404844, at \*2 (Conn. Super. Ct. Jun. 28, 1995) ("A person is *indispensable* if the relief demanded, practically speaking, couldn't be effectuated without the person being in the case . . . A person is *necessary* if they have an interest in the controversy[,] . . . the parties in the case won't run the risk of multiple damages or inconsistent obligations, and the court can fashion a remedy for the parties who remain in the case.") (citing *Sturman* and Fed. R. Civ. P. 19) (emphasis in original).

The "term complete relief refers only to relief as between the persons already parties, and not as between a party and the absent person whose joinder is ought." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) (citation and quotations omitted). "Courts are most likely to rule that complete relief may not be accorded among the parties present in circumstances where the absent party plays a significant role in the provision of some form of injunctive relief." *Rose v. Simms*, No. 95 Civ. 1466 (LMM), 1995 WL 702307, at \*6 (S.D.N.Y. Nov. 29, 1995).

Here, ZBP is, at minimum, a necessary party because in its absence, Plaintiff cannot obtain the complete relief that he seeks from the Removing Defendants. In his Complaint, Plaintiff seeks "[s]pecific performance of the contractual promises made to plaintiff," including delivery of "1% of the total issued and outstanding shares of [ZBP]" and "registration in his name as an official shareholder in China of [the ZBP] shares." [Dkt. #1-1 Compl. at Count 1 at ¶ 14 and Count 2 at ¶ 17]. In the event Plaintiff prevails, ZBP's presence is necessary to effectuate the re-registration of Beta Pharma's shares of ZBP in

**14**

Plaintiff's name and Plaintiff's receipt of all accompanying shareholder rights, including participation in ZBP's IPO.  The Removing Defendants concede that they lack the ability to perform these acts themselves, nor are they able to compel ZBP to undertake them, as they maintain that ZBP "is not now, nor has it ever been, a subsidiary of Beta Pharma," that Defendant Zhang left his position as vice president of ZBP's board over a year before the Complaint was filed, and that Zhang presently has no "role at Z[]BP."  [Dkt. #31-1, Zhang Supp. Aff. at ¶¶ 5, 10]; *see also* [Dkt. #88, Defs.' Resp. at 17 ("[N]either Beta Pharma [nor] Zhang . . . can compel the PRC to recognize the transfer of stock in [ZBP] to Plaintiff")].  The allegations in the Complaint further buttress this conclusion and indicate that ZBP is unlikely to assist the Plaintiff in obtaining the relief he seeks absent a judgment requiring it to do so.  *See* [Dkt. #1-1, Compl. at Count 3 at ¶¶ 13(e)-(f), Count 5 at ¶ 13(g), and Count 6 ¶¶ 14(e)-(f) (stating that Removing Defendants failed to disclose to Plaintiff their "knowledge that ZBP would not permit the ZBP shares transferred to plaintiff by [Beta Pharma] to be registered in China," that ZBP "would not recognize [Beta Pharma's] transfer of shares, [] that it had ordered [Beta Pharma] and Zhang to cancel or unwind the transaction by paying plaintiff the fair market value of his interest in ZBP[,]" and that "the ZBP board had ordered [Beta Pharma] to repurchase ZBP shares from investors at their current fair market value")].

B. <u>Chinese Law Does Not Render ZBP Unnecessary Because it Does Not Preclude it From Providing Relief</u>

The Removing Defendants principally respond by asserting that ZBP is neither necessary nor indispensable because Chinese law prevents ZBP from providing Plaintiff the relief he seeks.  [Dkt. #88, Defs.' Resp. at 9-19].  The

Removing Defendants direct the Court to PRC Company law, which they claim prevents joint stock companies like ZBP from approving or rejecting a transfer of shares of their securities.  [*Id.*].[9]

    To support these contentions, the Removing Defendants offer declarations from Professor Donald C. Clarke, a professor of law at The George Washington University, and a practitioner Rui Li, who is also a faculty member of the Shanghai University of Finance and Economics.  [Dkt. #88-1, Clarke Decl. at ¶ 1; Dkt. #88-3, Li Decl. at ¶ 1].  According to Professor Clarke, "[b]ecause [ZBP] is a Joint Stock Company, pursuant to the laws of the PRC, if a shareholder in [ZBP] transfers its stock to another individual, [ZBP] itself does not have legal authority to approve or reject the transfer."  [Dkt. #88-1, Clarke Decl. at ¶ 4].  Professor Clarke's conclusion is based on "Chapter 5, Section 2 of the Company Law of the People's Republic of China," which "does [not] provide for the company itself to have any say in share transfers."  [*Id.* at ¶ 4 n. 3].  Instead, "[w]hen the issuance or transfer of any equity interest . . . involves a foreign citizen receiving the equity interest . . . a government agency of the PRC [] must approve the transaction for it to be valid."  [*Id.* at ¶ 5].  Professor Li concurred, stating that "if a shareholder in [ZBP] transfers its stock to another individual, the transfer is effective only after the relative authority in charge of Commerce approves the transfer."  [Dkt. #88-3,

---

[9] The parties disagree as to which sections of Chinese law control the Court's fraudulent joinder analysis.  Plaintiff contends that the Law on Sino-Foreign Equity Joint Ventures is the relevant law because at the time of the parties' contract, ZBP was a Sino-foreign equity joint venture.  *See* [Dkt. #89, Pl.'s Resp. at 11-12].  The Removing Defendants urge the Court to apply PRC Company Law, which concerns joint stock companies, since in August 2013, prior to the filing of the Complaint, ZBP became and is presently a joint stock company.  *See* [Dkt. #91, Defs.' Reply at 5-6].  The Court need not resolve this dispute because even under PRC Company Law, the Court finds ZBP to be a necessary party.

Li Decl. at ¶ 4].  Thus, according to the Removing Defendants, ZBP "is a mere stakeholder" whose presence may be overlooked for purposes of subject matter jurisdiction.  [Dkt. #88, Defs.' Resp. at 15].  The Removing Defendants' argument fails for three reasons.

First, neither these declarations, nor any of the other authority the Removing Defendants cite, establish that Chinese Company law precludes ZBP from providing the relief Plaintiff seeks.  At most, they indicate that ZBP cannot *unilaterally* provide this relief.  As the Removing Defendants acknowledge, because of Chinese law, ZBP "*cannot ensure* that Plaintiff's stock will be registered on the books and records of [ZBP] . . . . Similarly, [ZBP] *cannot ensure* that Plaintiff is able to 'participate' in the IPO."  [Dkt. #88, Defs.' Resp. at 18-19 (emphasis added)].  To establish that ZBP was fraudulently joined, the Removing Defendants must show that Chinese law necessarily *precludes* ZBP from effectuating such relief.  *See, e.g., Grynberg Prod. Corp. v. British Gas, PLC*, 817 F. Supp. 1338, 1351-52 (E.D. Tex. 1993) (finding no fraudulent joinder where foreign law arguably precluded plaintiff's claim but where defendant failed to establish that foreign court "would *necessarily not* make an exception" which would permit for such a claim) (emphasis in original); *Bellorin v. Bridgestone/Firestone, Inc.*, 236 F. Supp. 2d 670, 685 (W.D. Tex. 2001) (declining to find fraudulent joinder where defendants argued that Mexican and Venezuelan law barred claim against non-diverse defendant upon considering "the uncertainty as to the viability of Plaintiffs' claim under Mexico law" which "must be resolved in favor of Plaintiffs"); *Hammerl v. Acer Europe, S.A.*, No. C 08-4754 JF (RS), 2009 WL 30130, at *9 (N.D. Cal. Jan. 5, 2009) (rejecting fraudulent joinder

argument based on Swiss law where defendant relied on statement by Swiss lawyer that "[g]enerally, under Swiss law, a claim for breach of contract can only be brought against an entity that is, formally or materially, a party of the contract" due to the presence of "two major qualifying words: 'generally' and 'materially'" which "prevent[ed] the Court from attributing to this evidence of Swiss law the meaning that [the defendant] urge[d]"); *Gibboni v. Hyatt Corp.*, No. 10-2629, 2011 WL 1045047, at **3-4 (E.D. Pa. Mar. 22, 2011) (finding that because of "the complex, discretionary and inexact nature of Mexican tort law" there was "a possibility that the state would find that the Complaint state[d] a cause of action" against non-diverse defendant and remanding case).

The Removing Defendants come closest to meeting this standard through Professor Li's assertion that "[n]o law of the PRC would permit [ZBP] to issue shares to satisfy a foreign judgment." [Dkt. #88-3, Li Decl. at ¶ 5]. However, the only support Li cites for this conclusion, Article 142 of the Company Law of the People's Republic of China, does not provide any. [*Id.*]. Nowhere does this Article address China's treatment of foreign judgments. *See Company Law of the People's Republic of China* (2005 amended), Art. 142, *available at* http://www.npc.gov.cn/englishnpc/Law/2007-12/13/content_1384124.htm (last viewed Aug. 24, 2015). In addition, at the present time, the restrictions on transfers imposed by this Article are not applicable to Beta Pharma's shares of ZBP, since ZBP's IPO has yet to occur. *See id.* ("Shares issued prior to the public issue by a company shall not be transferred within one year from the date the shares of the company are listed and traded at stock exchanges."). Similarly, that Chinese law does not expressly provide ZBP with a role in the transfer process

does not mean that ZBP is *barred* by law from requesting and petitioning the Ministry to approve a transfer, or from otherwise providing Plaintiff the relief he seeks following an approval. *See* [Dkt. #88-1 Clarke Decl. at ¶¶ 4, 4 n. 3 (opining that ZBP "does not have legal authority to approve or reject [a] transfer" of its shares, citing Chapter 5, Section 2 of the Company Law in support, and stating that "[n]owhere does [this section] provide for the company itself to have any say in share transfers"); *see also Company Law of the People's Republic of China*, ch. 5 sec. 2].

Taken together, the declarations submitted by the Removing Defendants establish that ZBP's presence would not guarantee Plaintiff the relief he seeks because any transfer of ownership interest in ZBP's shares must be approved by the Chinese Government. That the operation of foreign law poses some risk, no matter how remote, to Defendant ZBP's ability to provide relief is not sufficient to transform an otherwise capable and necessary party into a nominal one.  Such a rule would effectively prevent the mandatory joinder of individuals and entities from a host of foreign nations.  It would also run counter to the plain language of Rule 19, which concerns parties whose presence is *necessary* for a plaintiff to obtain complete relief.  Fed. R. Civ. P. 19(a)(1)(A); *see also Gibbs*, 255 F.R.D. at 328 n. 1 ("[U]nder Rule 19(a)(1)(A) . . . a party is necessary 'if in that person's absence, the court cannot accord complete relief among existing parties.'").  At most, Chinese Company Law renders ZBP's presence *not sufficient* alone to provide Plaintiff the relief.

Second, and relatedly, the Removing Defendants do not offer any evidence of practical impossibility, such as evidence tending to show that the Chinese

Ministry of Commerce is unlikely to approve a request by ZBP to acknowledge a transfer of its stock, or that ZBP is otherwise incapable of persuading the Ministry to permit such a transfer.  ZBP is the only Chinese defendant named in this action and is the company whose stock Plaintiff seeks.  It would thus appear that ZBP offers the best, and perhaps *only*, chance of prevailing upon the Ministry in the event Plaintiff is adjudged the rightful owner of Beta Pharma's shares.  Also, in the event the Ministry does approve a transfer, ZBP—and only ZBP—would be able to register the shares in Plaintiff's name and provide him with shareholder rights.

The Removing Defendants do not address these issues and instead focus on the general and considerable difficulties litigants face when attempting to enforce a judgment issued by a U.S. court in China.  *See* [Dkt. #88-1, Clarke Decl. at ¶ 7].  While such difficulties are legitimate, they have not prevented federal courts from entering judgments granting relief in cases involving Chinese defendants.  *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *10 (E.D.N.Y. Oct. 23, 2012) (approving final settlement in price-fixing litigation involving a group of Chinese vitamin manufacturers and identifying "the possibility of being unable to enforce a judgment" as one of the "risks" supporting attorneys' fee award); *Vringo, Inc. v. ZTE Corp.*, No. 14-cv-4988 (LAK), 2015 WL 3498634, at **4, 12 (S.D.N.Y. Jun. 3, 2015) (granting injunctive relief and noting a prior grant of partial summary judgment against a Chinese telecommunications company).  Nor have they compelled courts to overlook otherwise necessary or indispensable parties.  *See Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Intern. Corp.*, 401 F.3d 28, 35 (2d Cir. 2005) (affirming

district court dismissal of counterclaims where Chinese entity was a necessary party and had not been joined).  In addition, the risk that a U.S. judgment may not be enforceable in China is somewhat mitigated here, because ZBP is presently a participant in a joint venture with a large U.S. pharmaceutical corporation and has invested millions of dollars in another U.S. drug manufacturer.  *See* [Dkt. #89-1, Ex. A to Katz Decl. at 1-1-28; Ex. D to Katz Decl. at 35].  These facts suggest that ZBP may have interests (financial or otherwise) in areas which do recognize U.S. judgments.

Third, none of the district court opinions the Removing Defendants cite in support of their claim that ZBP is a nominal party because it "simply cannot afford the desired relief to the plaintiff[]" are apposite.  [Dkt. #88, Defs.' Resp. at 17].[10]  For instance, the plaintiffs in *Norman* brought a claim against four defendants for a judgment declaring that "elections should proceed according to [a] new reapportionment plan."  *Norman*, 796 F. Supp. at 658.  The court found two of the defendants to be nominal parties since they had not "manifested any intention to block the plan's administration," and had instead "sign[ed] the reapportionment legislation into law . . . fulfill[ing] an indispensable role in the plan's enactment."  *Id*. at 658-59.  Given the fact that these two named defendants had taken steps *in support* of the plaintiffs' position, the court was "hard-pressed to conceive of how a declaration against them would provide relief in any manner."  *Id*. at 659.  As for the other two defendants, the court found that while

---

[10] *See Patrick v. Porter-Cable Corp.*, No. 3:10-cv-131 (MRK), 2010 WL 2574121 (D. Conn. Apr. 1, 2010); *Norman v. Cuomo*, 796 F. Supp. 654, 658 (N.D.N.Y. 1992); *Avon Prods. Inc. v. A/J Partnership*, Nos. 89 Civ. 3743, 89 Civ. 8032 (PNL), 1990 WL 422416 (S.D.N.Y. Mar. 1, 1990); *Saxe, Bacon & Bolan P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046 (S.D.N.Y. 1981).

they had voted against the reapportionment plan and had "otherwise been outspoken in their opposition," they had "taken no formal steps to impede the election according to the plan." *Id.* As a result, the court concluded that the plaintiff's conflict with those defendants constituted "[a] mere dispute of policy." *Id.* In addition, the court found that "[a] declaration of validity against [the remaining defendants] would settle the active dispute." *Id.* In light of these facts, neither set of nominal defendants is analogous to ZBP in this case.

Most significantly, and alone sufficient to distinguish this case, is that the *Norman* court found that even if the plaintiff was entitled to the declaratory judgment against the four defendants, such a judgment "would not affect [the] plaintiffs' rights or otherwise promote their interests." *Id.* Here, a judgment ordering ZBP to request approval of a transfer of Beta Pharma's shares from the Ministry of Commerce, and, upon approval, to register Beta Pharma's shares in Plaintiff's name, bestow upon Plaintiff all the rights of a ZBP shareholder, including the ability to participate in ZBP's IPO, and to declare Plaintiff's ownership interest in ZBP would certainly promote the Plaintiff's interests. The case is further distinguishable because unlike those defendants who took affirmative steps in support of the reapportionment plan, or who merely cast unsuccessful dissenting votes and voiced their opposition, the Complaint asserts that ZBP attempted to block and unwind Beta Pharma's transfer of securities to the Plaintiff. [Dkt. #1-1, Compl. at Count 5 at ¶ 13(g) and Count 8 at ¶ 14(g)]. Specifically, the Complaint avers that ZBP's board of directors decided not to "permit [Beta Pharma] to transfer shares to plaintiff," not to "recognize [Beta Pharma]'s transfer of shares," and affirmatively "ordered [Beta Pharma] and

**22**

Zhang to cancel or unwind the transaction" and instead "pay[] plaintiff the fair market value of his interest in ZBP."  [*Id.*].[11]

The remaining cases to which the Removing Defendants cite are similarly inapposite.  *See Patrick*, 2010 WL 2574121 at *4 (finding defendant who did not consent to removal a real party and thus subject to the unanimity rule despite noting that "it [was] unlikely" that the defendant would be called upon to satisfy any judgment in the case); *Saxe, Bacon & Bolan, P.C.*, 521 F. Supp. at 1048-49 (finding three non-diverse individual plaintiffs nominal parties because their claims were not "independent claims or injuries" from those brought by the company with which they were affiliated); *Avon Prods. Inc.*, 1990 WL 422416, at *2 (S.D.N.Y. Mar. 1, 1990) (holding rights agent was nominal party because its "obligations [we]re minimal and purely ministerial in nature," it could "act only at the direction of the officers of [the plaintiff]" it could not "be held liable for any statements because all such statements are deemed to be made by [the plaintiff]," and the rights agent was indemnified under the relevant agreement "for any and all liability").

C.   ZBP is Not a Mere Stakeholder or Depositary of Disputed Assets

The Removing Defendants raise *Salem Trust Co. v. Manufacturers' Fin. Co.*, 264 U.S. 182 (1924) and its progeny[12] in claiming that, even if ZBP's presence is

---

[11] Even if the Removing Defendants are correct that because ZBP is now a joint stock company, it may not "block the transfer of shares from Beta Pharma to Plaintiff," this does not erase ZBP's prior efforts to stymie the Plaintiff.  [Dkt. #91-1, Clarke Supp. Decl. at ¶ 7].  Nor does it square the critical distinction between the present matter and *Norman*, insofar as the court concluded that complete relief could be obtained in the absence of the nominal defendants.

[12] *See In re SK Foods, L.P.*, BAP Nos. EC-12-1624, EC-09-29162, EC-11-02337, 2013 WL 6488275, at *11 (B.A.P. 9th Cir. Dec. 10, 2013); *DiBella v. Carpenter*,

technically necessary for Plaintiff to obtain complete relief, ZBP is a mere stakeholder to this action.  [Dkt. #88, Defs.' Resp. at 10-14].  These cases stand for the proposition that a defendant who is not necessary for complete relief, who is a mere depositary of disputed assets, or who must perform purely ministerial tasks in connection with a judgment, is not a necessary party.  *See Salem Trust*, 264 U.S. at 190 (defendant trust company deemed nominal defendant as it was a mere depositary whose "only obligation [wa]s to pay over the amount deposited with it when it is ascertained which of the other parties is entitled to it"); *SK Foods*, 2013 WL 6488275, at *11 (stating that even in absence of non-diverse defendant "complete relief is possible between the parties before this court" and noting defendant did not appear to have a "legally protected interest" in the dispute); *Dibella*, 2010 WL 2605824, at *3 (corporation was nominal defendant where only claim for relief against it was to distribute proceeds of corporation in accordance with interests determined by court and where "no decision by the Court would impose any additional legal duties on [the corporate defendant]"); *Int'l Union*, 123 F.R.D. at 433-34 (finding non-diverse subsidiary of parent corporation a nominal defendant because it would not be affected by a judgment for or against the parent corporation, would not have been bound by such a judgment, and in the absence of the subsidiary, "plaintiff w[ould] not suffer diminished relief"); *Pesch*, 637 F. Supp. at 1537 (corporation whose only obligation if plaintiff prevailed was to perform purely ministerial tasks in

---

No. 2:10-cv-174, 2010 WL 2605824, at *3 (S.D. Ohio Jun. 25, 2010); *Int'l Union, United Auto., Aerospace & Agric. Implement Works of Am., U.A.W. Local 1500 v. Bristol Brass Co.*, 123 F.R.D. 431 (D. Conn. 1989); *Pesch v. First City Bank of Dallas*, 637 F. Supp. 1530 (N.D. Tex. 1986); *Kearney v. Dollar*, 111 F. Supp. 738 (D. Del. 1953).

connection with transfer of securities deemed a nominal defendant); *Kearney*
(corporation held nominal party where its "only connection" to the controversy
was a request that it "be enjoined from transferring the shares upon its books to
any person other than the parties to the suit without leave of court").  Such cases
are plainly distinguishable from the present matter for at least three reasons.

      First, as the Court noted in its Order to Show Cause, there is case law
holding that where, as here, a dispute concerns ownership interests in a
corporation and the plaintiff seeks as part of their relief an injunction ordering the
registration of shares in their name on the corporation's books and records and a
declaratory judgment as to their ownership interests, the corporation is a
necessary party.  *See Crump v. Thurber*, 115 U.S. 56, 60 (1885); *see also Fisher v.
Dakota Cmty. Bank*, 405 F. Supp. 2d 1089, 1095 (D. N.D. 2005) (stating that the
*Crump* court found the named corporation to be "an indispensable, and not
nominal party . . . because the relief requested included requiring the corporation
to make adjustments in its stock ownership rolls and issue new shares of stock")
(finding bank which issued a letter of credit which was the subject of the
underlying dispute a necessary party).[13]  Indeed, "most lower federal courts"

---

[13] **The Removing Defendants note that some courts have narrowly construed the
*Crump* holding as turning on the Court's concern regarding the lack of
personal jurisdiction over other potentially liable parties.  *See* [Dkt. #88, Defs.'
Resp. at 12-13 (citing and quoting *Kearney* and *Williamson v. Krohn*, 66 F. 655,
661 (6th Cir. 1985))].  However, the narrow reading encouraged by the
Removing Defendants appears to be in the minority.  The prevailing (and most
recent) view is the one expressed in *Fisher*.  *See Moloney v. Cressler*, 210 F.
104, 112 (7th Cir. 1913) (citing *Crump* in support of finding that company
defendant was an "indispensably necessary part[y]" because it was "holding
the stock under the contract whose enforcement is thus sought"); *Rogers v.
Van Nortwick*, 45 F. 513, 514 (E.D. Wisc. 1891) (citing *Crump* and finding
"defendant company is an indispensable party" where corporation defendant
was necessary "to carry into effect the judgment upon the controversy**

have construed the "formal or nominal party" doctrine in *Salem Trust* as standing for the "limited . . . 'exception' . . . in which it is clear that . . . the party has nothing at stake in the litigation, and *no real, present claim for relief is being sought against the party*."  *Fisher*, 405 F. Supp. 2d at 1095 (emphasis added); *Skaaning v. Sorensen*, No. 09-00364 DAE-KSC, 2009 WL 3763056, at **6-7 (D. Haw. Nov. 10, 2009) (quoting *Fisher* and finding LLC necessary party); *State Farm Mut. Auto. Ins. Co. v. Sentry Select Ins. Co.*, No. 4:15-CV-149 CDP, 2015 WL 500519, at *2 (E.D. Mo. Feb. 5, 2015) (quoting *Fisher* and rejecting argument that insured was a nominal party to a claim for a declaratory judgment action between two insurers).

Second, as the Removing Defendants acknowledge, if Plaintiff were to prevail, ZBP would be required to do more than ministerial tasks falling within its sound control, like those described in *Salem Trust*, *Pesch*, and *Kearney*.  ZBP will also have to seek approval from the Chinese Ministry of Commerce, a "process"

---

touching the ownership of the stock"); *Muellhaupt v. Joseph A. Strow-Bridge Estate Co.*, 136 Or. 106, 118 (Or. 1931) (citing *Crump* and concluding that "[t]his being a case wherein part of the relief sought consists in the cancellation of certain corporate stock issued to defendants [] and the reissuance thereof to plaintiff, the corporation is an indispensable party defendant.").  Indeed, courts in this Circuit which have considered *Crump* appear to embrace this view.  *See Patterson v. Farmington St. Ry. Co.*, 111 F. 262, 263 (D. Conn. 1901) (discussing *Crump*, concluding that "it does not seem to differ essentially from the present case," and granting motion to remand suit seeking specific performance of a contract involving the transfer of a non-diverse corporation's stock along with injunctive relief against the corporation); *but see Coleman v. Johnston*, 532 F. Supp. 370, 371 (S.D.N.Y. 1981) (not considering *Crump* and relying on *Salem Trust* and *Kearney* in finding defendant corporation nominal party to a suit for specific performance of contract involving that corporation's shares where corporation's role was limited "to perform[ing] the ministerial act of transferring the shares upon the books of the corporation").  In any case, the Court need not resolve this dispute, since it does not rely solely upon *Crump* or the type of relief Plaintiff seeks from ZBP in reaching its conclusion that ZBP is a necessary party.

that "is not simply ministerial."  [Dkt. #91-1, Clarke Supp. Decl. at ¶ 8].

Third, the record strongly suggests that ZBP is not a neutral holding entity or corporation.  *Cf. Salem Trust*, 264 U.S. at 190 (concluding the non-diverse bank had "no interest in the controversy"); *Pesch*, 637 F. Supp. at 1539 ("The picture painted by [plaintiff's] state petition, as amplified by the evidence contained in the affidavits and exhibits submitted by the parties . . . is that the [the non-diverse company and transfer agent] are *nothing more than neutral bystanders*.") (emphasis added); *Kearney*, 111 F. Supp. at 741 (noting that non-diverse corporate defendant "filed an answer in which [it] allege[d] that it ha[d] no corporate interest in the subject matter of the controversy referred to in the complaint and [t]hereby disclaim[ed] any corporate interest in the controversy"). Instead, ZBP appears to be a closely held private company with strong ties to the Removing Defendants.  ZBP was a joint venture created by Defendant Beta Pharma.  [Dkt. #1-1, Compl. at Count 1 at ¶ 5].  When it was created, Beta Pharma received a 45% stake in the company, and as of June 2014, Beta Pharma remains a significant shareholder.  [*Id.* at ¶ 7; Dkt. #89-1, Ex. A to Katz Decl. at 1-1-28, 1-1-44, 1-1-45].  At the time Plaintiff contracted with Defendant Zhang and Beta Pharma, Zhang was the Vice-President of ZBP and a member of ZBP's board of directors, positions he held until March 2013.  [Dkt. #1-1, Compl. at Count 1 at ¶ 8]; Dkt. #31-1, Zhang Supp. Aff. at ¶ 5].  Even after leaving these positions, Zhang retained and continues to "have personal knowledge regarding [ZBP] and its operations."  [Dkt. #31-1, Zhang Supp. Aff. at ¶ 6].  He also serves as Beta Pharma's CEO, president, and a shareholder.  [*Id.* at ¶ 3].  In addition, the Complaint alleges, and the Removing Defendants have not offered any evidence

to the contrary, that at the time of the events in dispute, ZBP "would not permit [Beta Pharma] to transfer shares to plaintiff, [] would not recognize [Beta Pharma's] transfer of shares, and . . . ordered [Beta Pharma] to cancel or unwind the transaction by paying plaintiff the fair market value of his interest in ZBP." [Dkt. #1-1, Compl. at Count 5 at ¶ 13(g) and Count 8 at ¶ 14(g)].   At present, ZBP has neither appeared in this action nor responded to the allegations in the Complaint, so there is nothing to indicate that, absent a judgment, ZBP would acquiesce to Plaintiff's requests for a declaration of his ownership interest, registration of Beta Pharma's shares in Plaintiff's name, and the right to participate in ZBP's IPO.  Nor does it seem likely to voluntarily petition the Chinese government to the benefit of Plaintiff.  Indeed, its longstanding relationship with the Removing Defendants and its previous opposition to precisely what Plaintiff now seeks strongly suggest that it will not.

    For these reasons, the Court finds the authority cited by the Removing Defendants unavailing and ZBP to be at least a necessary party to this action, whose presence deprives the Court of subject matter jurisdiction.

### D.   The Removing Defendants' Remaining Arguments Similarly Fail

    In their removal notice and show cause response, the Removing Defendants raise other arguments in support of fraudulent joinder, including: (i) improper service of ZBP; (ii) lack of personal jurisdiction over ZBP; and (iii) that Plaintiff joined ZBP solely to defeat diversity jurisdiction.  None of these arguments succeed.

    As for improper service, the Court explained in its Order that "non-service is insufficient to permit a court to overlook the presence of a non-diverse party."

**28**

[Dkt. #82, Order to Show Cause at 6 (citing and quoting 14B Charles Alan Wright, Arthur R. Miller, Edward H. Copper, Federal Practice and Procedure § 3723 (4th ed. 2009) ("A party whose presence in the action would destroy diversity must be dropped formally, as a matter of record, to permit removal to federal court.  It is insufficient, for example, that service of process simply has not been made on a non-diverse party."); Rene D. Harrod, *A Primer on Removal*, Federal Lawyer, 53-Oct Fed. Law. 20 (Oct. 2006) ("[A]n unserved nondiverse defendant will prevent removal if diversity is the only basis for federal jurisdiction.")].  Accordingly, courts routinely decline to overlook non-diverse defendants on the basis of improper service.  *See Worthy v. Schering Corp.*, 607 F. Supp. 653, 655 (E.D.N.Y. 1985) ("It is well established that an action based on state law cannot be removed to federal district court if any nondiverse defendant is joined in the complaint, even if the nondiverse defendant was never served."); *Burke v. Humana Ins. Co.*, 932 F. Supp. 274, 275 (M.D. Ala. 1996) (remanding case where removing party "contend[ed] that the court may ignore [the nondiverse party's] citizenship because he has not yet been properly served"); *Millet v. Atl. Richfield Cnty.*, No. 98-367-P-H, 1999 WL 33117145, at *4-5 (D. Me. Apr. 2, 1999) (rejecting defendant's contention that court could not consider citizenship of nondiverse defendant where plaintiff failed to comply with state procedural rules governing joinder).  It appears the Removing Defendants have abandoned this argument, as they did not press it in either their response or reply.

Lack of personal jurisdiction is also a non-starter because the Removing Defendants may not assert the defense on behalf of co-Defendant ZBP.  *See* [Dkt. #88, Defs.' Resp. at 19-21].  Personal jurisdiction "represents a restriction on

judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  It is therefore, "first of all an individual right," which is waivable. *Id.* at 703; *see also* Fed R. Civ. P. 12(h)(1).  As a result, courts in this Circuit reject efforts by co-defendants to assert the defense on behalf of other defendants. *See, e.g.*, *Duttle v. Bandler & Kass*, No. 82 Civ. 5084 (KMW), 1992 WL 162636, at *5 (S.D.N.Y. Jun. 23, 1992) (rejecting defendants' request "to dismiss the action against the [defendant] trustee pursuant to Rule 12(b)(2)" because "a third party lacks standing to make such a motion"); *Sayles v. Pac. Eng'rs & Constructors, Ltd.*, No. 08-CV-676S, 2009 WL 791332, at *5 (W.D.N.Y. Mar. 23, 2009) ("The foreign defendants, who would have standing to contest the exercise of personal jurisdiction over them . . . have yet to appear . . . [T]he appearing defendants lack standing to raise this objection to exercising personal jurisdiction over codefendants.").  Courts elsewhere have applied the same reasoning to co-defendants' assertions of lack of personal jurisdiction over non-diverse defendants in the fraudulent joinder context.  *See, e.g., In re Pharma. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 109, 119-20 (D. Mass. 2006) (stating that defendant's fraudulent joinder "argument regarding personal jurisdiction fails immediately" in part because "personal jurisdiction is an individual liberty right and is therefore waivable, and neither of the other two physician defendants . . . have moved to dismiss based on personal jurisdiction"); *Zufelt v. Isuzu Motors Am., LLC*, 727 F. Supp. 2d 1117, 1131 (D. N.M. 2009) ("[I]t is inappropriate to permit [the removing defendant] to assert a defense that is available only to [another defendant] to meet its burden of showing there

is no possibility that [the plaintiff] will be able to establish a cause of action against [that defendant] in state court."); *Seguros Comercial America, S.A. de C.V. v. Am. President Lines, Ltd.*, 934 F. Supp. 243, 245 (S.D. Tex. 1996) (holding defendant "cannot establish that [co-defendant] was fraudulently joined based upon" a lack of personal jurisdiction because such "a defense [] is available only to [the co-defendant]").  The Removing Defendants do not address the issue of standing in their response, nor is it otherwise apparent why the Removing Defendants may properly assert the defense of lack of personal jurisdiction on behalf of ZBP in support of their claim of fraudulent joinder.  ZBP did not consent to the removal of this case, has not asserted the defense at any point, and has not even entered an appearance.  *See Zufelt*, 727 F, Supp. 2d at 1131 (noting that the non-diverse defendant "has not raised the fraudulent-joinder argument based on lack of personal jurisdiction, nor . . . filed a motion to dismiss based on rule 12(b)(2).  Indeed, [the non-diverse defendant] has not even been served yet, nor does it have counsel that has appeared before the Court"); *Seguros*, 934 F. Supp. at 245 (stating that "[i]t is undisputed that . . . [the removing defendant] has not obtained [the non-diverse defendant]'s consent to join in the notice of removal" and noting that the non-diverse defendant "did not file an answer in state court and has not appeared in this Court").

Finally, the Removing Defendants contend that ZBP was "joined solely to defeat diversity jurisdiction."  [Dkt. #88, Defs.' Resp. at 21-22].  In support of their position, the Removing Defendants cite exclusively to Plaintiff's alleged lack of diligence in pursuing a default judgment against ZBP.  *See* [*id.*].  The Removing Defendants claim that because "Plaintiff has made no effort to do so . . . Plaintiff

has never really sought any relief against [ZBP]" and "does not think that any action from [ZBP] is necessary for him to obtain . . . any [] relief that he seeks." [*Id.* at 22].  This argument, rooted in Plaintiff's post-Complaint conduct, misapprehends the fraudulent joinder doctrine.  *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 3776385, at *3 (S.D.N.Y. Jun. 17, 2015) ("[A] plaintiff's subjective motive or intent to recover (or lack thereof) is irrelevant to the fraudulent joinder analysis in this Circuit.") (rejecting fraudulent joinder claim even after determining it "may well be true" that the plaintiff "has no intent to proceed with his suit against—not to mention recover from—his wife"); *Locicero v. Sanofi-Aventis U.S. Inc.*, No. 08-CV-489S, 2009 WL 2016068, at *8 (W.D.N.Y. Jul. 10, 2009) ("The motive of the plaintiff in joining the challenged party is immaterial to the determination of fraudulent joinder.").

## V.    Conclusion

Based upon the foregoing reasoning, the Court, *sua sponte*, REMANDS this case back to the Connecticut Superior Court for further proceedings.  The clerk is directed to close this file.

IT IS SO ORDERED.
_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: August 24, 2015